Please be seated. Could the clerk call the next case, please? 3-13-0849, Jacqueline and Daniel Patten, Towns, by James Springer v. Deborah and Mark Skiles. Mr. Springer, good afternoon. Good afternoon. I may please the court. My name is James Springer. I am counsel for plaintiffs' appellants Jacqueline and Daniel Patten, who are also present in the court today. This case concerns the sale of a defective residential property, and more specifically, the inadequate word of damages to the plaintiffs by the trial court. The property at issue is a residential property located in Mackinac, Tazewell County, Illinois. Before its development, it was farmland, with a natural drainage course passing through it. It was purchased by developers in 2002, and in 2005, two of the defendants constructed a single family residence on the lot. The first purchases of the house and lot were defendants' appellees, Deborah Skiles and Mark Skiles. My clients, the Pattens, purchased the property in 2008 from the Skiles. As part of their pre-purchase investigation, they received the statutorily mandated disclosure report from the Skiles. In response to the question about flooding or recurring leakage problems in the basement, the Skiles said, quote, had water in the basement due to grading issue in 2005, had it regraded, and never had a problem with it since, unquote. In fact, the evidence produced at trial showed that the Skiles had reported two episodes of basement flooding to their insurance company in 2007 and 2008 and received reimbursement for property damage due to those episodes of flooding. Do you remember what the cause of those reports were? Yes. In both cases, they were water from outside the house entering into the basement. I'm not sure I can be more specific than that, but it was exterior water. 2007 was a sump pump failure. 2008 was a first sewage pipe under the ground. How does that relate to drainage? Well, the sewage backup, although we don't have all the details, could be due to inadequate storm drainage, which is common. The storm sewer and the sanitary sewer, although they shouldn't be, are often hooked up. Exhibits 26 and 27 show that it was a burst pipe and there were some rotor-rooter charges and things like that. But that's okay. So your position is that the 2007 and 2008 issues were related to runoff or drainage issues? Yes, that is correct. And actually, even if they weren't, the information was concealed from my clients. I mean, it's a thing that affected the value of the house, and therefore, even if it had been a cracked basement that had been covered over, that would have affected the value of the house and also would have constituted fraud to conceal that. Mr. Spray, I have a question. How long throughout the process were the skiles represented by counsel? As far as I'm speaking from memory, I think it was probably about a year, a year and a half. They had an attorney who represented them here in his appearance, and I know the attorney filed pleadings. He filed a motion to dismiss and then filed an answer. And he also engaged in discovery. And that, I think, might have taken a year and a half, something like that. Okay, and it was in that attorney's answer that they raised that affirmative defense of the failure to mitigate? They raised that to the personal injury and loss of consortium accounts, Judge. They answered on two different occasions, just due to the way the pleadings developed. And those affirmative answers were not stricken as a consequence of the rule to show cause? The judge did not enter an order to that effect. That's true. He did enter judgment against them on liability, but that's true. He did not strike the pleadings. That's correct. When the judge did enter the judgment on liability, did he specify which counts? No, he did not. I think it's fair to say that it's all existing counts. I mean, the judge didn't say certain counts and not other counts. He did say, I find against the Skiles on the issue of liability. I have a procedural question for you. I've read the amended complaint, and I've read your closing argument in trial, and I also studied your briefs on appeal. And you don't seem to discuss counts three and four, which are the counts alleging consumer fraud, nor do you seem to discuss counts five and six, which are the breach of implied warranty of capitability. At some point in the process, were those counts dismissed by the court? As to the Skiles, the count under the statutory consumer fraud was stricken. The judge ruled that it could not apply to a consumer transaction if both parties were consumers. Okay. And the other, I'm sorry, which other count did you mention? It was five and six, the breach of warranty, implied warranty of habitability. Don't address it. I think that may have been stricken also. The counts that were still in existence were rescission count and a count alleging fraud and requesting damages. Those were in existence, and then we amended to add personal injury, and those were also in existence when a judgment was entered by the judge. I'm emphasizing the property damage counts in this appeal. The rescission count and the fraud count both allege misrepresentations and property damage as a result. So that's what I'm emphasizing. On the consumer fraud count, you requested punitive damages. Once that count was stricken, I would guess the punitive requests also dissipated. There was a fraud count for damages. Common law fraud is one and two, and you did request punitive damages. Yes, we did. On common law fraud, one and two, yes. Did the trial court make any specific findings as to why punitive damages were in order? I don't think it did. The court awarded a certain amount of punitive damages initially, and then in my post-judgment motion, I asked for additional damages, an increase in damages, punitive damages. I don't recall what set of argument, but the court did. The court doubled the punitive damages. That's correct. In large part because your clients had $100,000 in attorney's fees. I think that's right. I certainly made that argument to the court that you can use. My question is when there's a default judgment even before the trial started, how did the attorney's fees, at least that portion the Skiles would be responsible for, escalate to $100,000? Well, Judge, I didn't ask for actual recovery attorney's fees. But that was the measure for punitive damages. That was the measure for punitive damages. That's correct. Well, that figure was about three-quarters of the way through the trial. It included two or three years of litigation. There was a lot of motion practice in this case, and some counts were strict. Initiated by the Skiles? Yes. They moved to strike some of the counts, and some of those counts were granted. Some of the motions were granted. The other attorneys also moved to strike various counts. Okay. You are seeking now that we revisit damages and also that we consider whether rescission should have been allowed. That is correct. I'm a little confused by the amended complaint because Count 8, 9, or 7 and 8 allege rescission as though it were a cause of action. Judge, I put it in a separate count simply to make sure it didn't get confused. I was just being cautious. I mean, the rescission is based upon a theory of fraud. And since it's equitable relief, some attorneys I know and I often plead that in a separate count just to avoid confusion. Counts 1 and 2, I believe they were, were for monetary damages for fraud. And then a couple of counts later, we put in a count for rescission against the Skiles, again, based upon a theory of fraud. You didn't request rescission as a remedy for the common law fraud in Counts 1 and 2, but you requested rescission as though it were a separate cause of action in Count 8. So I want to understand your theory of the case, and that is because of the common law fraud, you think the contract should be rescinded. That is correct. You are not alleging a breach of contract, though. Well, the question, that is correct. And I have to presume it's because the contract itself says that you have to give notice of default and give them an opportunity to incur any default. So I think I figured out why you went with the common law fraud, but I'm a little confused as to why you think rescission is a proper remedy for the common law fraud. Well, it turns out, aside from the authority from the various circuits saying that it is available as a remedy for fraud, it's an equitable remedy, so it depends upon the equities. Does it require clean hands? I don't think it requires clean hands. I will say that the doctrine of unclean hands was not raised by anybody, and people did talk about failure to mitigate, but the defense of unclean hands... Which is kind of the same thing, though, because the trial court found, as to all defendants, and that was the court's language... That's correct. As to all defendants, your clients did not mitigate. And in other words, if you look at it on the flip side, did something to aggravate the damages. And so that's where I'm coming at. Do you think that finding a failure to mitigate now precludes us from rescinding, which is what you request as a remedy, an equitable remedy? I understand. Judge, the doctrine of unclean hands requires something on the part of the opposing party that goes beyond simply failing to live up to its obligations. I mean, it requires fraud, misconduct. If one party engages in fraud and the other party engages in fraud, too, you have unclean hands in that case. That's not the case here. Nobody has even alleged that. The issue that was brought up by some defendants, although not by the Skiles in these two counts, was did Mr. and Mrs. Patton adequately address the problems of their basement flooding. I think, and I've argued here, the evidence shows they did, and the defense did not prove their defense. But even so, what it shows is simply failure to be diligent as opposed to committing fraud or misleading somebody. Did the Skiles proceed at all on their affirmative defense? They never submitted any evidence in support. They did plead an affirmative defense as to these property counts, and the affirmative defense said something like we're not appraisers, we're not builders. I forget what it was. It wasn't legal language, but it was something about we don't have an obligation to take care of these things. It was just in their reply and their answer. Were they ever in court and ever put on any evidence, Mr. and Mrs. Skiles, as to their claim, their affirmative defense for the failure to mitigate? No, they did not, Judge. Do you think it was fair, if the trial court could look at the claims in 2008 and 2007, I think the damage claimed by the Skiles for purposes of insurance was $4,000 or $5,000 worth of damage. But yet in 2009 and 2010, your clients are claiming $9,000 and $16,000 in damage based on the same condition. Do you think the trial court could have compared those numbers and maybe come up with the conclusion that he did not find Mrs. Patton to be very credible at all? Well, Judge, the numbers that we offered at trial as to the damage caused by the first two floods, the cost to remediate the first two floods, came from insurance records. And I can't quote those to you. My memory is about $25,000, putting the two together. Okay. $9,000 and $16,000 would be $25,000. Yeah. And those were the out-of-pocket costs, some of them paid by insurance, most of them paid by insurance, in fact. Why would they be so high in comparison to what happened when the Skiles lived there, if nothing had changed? Judge, I do not know the answer to that. We do know the Skiles had water in the basement because we had a witness who appeared at court and told us he'd seen it down there and he'd seen the trucks that were pumping out the water. So whatever is described in the insurance records is supported by testimony that the Skiles did, in fact, have water in the basement. Didn't the court find that your clients had modified the property and that there was a fairly easy fix to this, that there was a roof over a porch and maybe a cement path or something? That's correct. What happened was that my clients put a roof over an existing porch.  And then there was a, sometimes called a shed, and they added some concrete around the front and the side of that shed. No engineer says that changed the drainage. I mean, our engineers said on cross-examination, well, if they added concrete, then sure, there'd be a little more runoff. But the basic problem isn't anything to do with this. It's the water coming from the north and the northeast onto their property. And the ditch on the east can't begin to handle that runoff. And the French drain on the north can't begin to handle its runoff. In fact, the defendants' expert agreed with that, too. He didn't have a dollar figure to fix it, but he said, yeah, that's the problem. When you say defendants, you mean the other defendants, not the Skiles. That's right, Mr. Stoltz. Counsel has two minutes. I'm sorry? Counsel has two minutes. The Skiles did not call an expert witness. Judge, I'm going to jump ahead, obviously. I appreciate your questions. I want to point out that there are a couple of examples where there was uncontradicted expert testimony, one by Mr. Owen Arvin. And Owen stated that given the tendency of the property to flood, my clients had paid way too much for it. They paid $131,000 too much. And again, there is no contradictory opinion or testimony or evidence on this issue. That should have been a warning. The other thing is the mold damage. Again, that's uncontested. We presented two experts. They have good qualifications. They said there's mold in the house. It's dangerous. It needs to be fixed. It's going to cost $32,500 to fix that mold. And the trial court simply disregarded the testimony. There's nothing to compare it with or refute it. There's no expert that says, I was in there. There's no mold. There's nothing like that. The other thing, Judge, is that I realize I'm asking you to reverse the circuit court and actually enter judgment on your own. And in part that is because of what the Skiles have done in these cases. They have refused to participate at all. I have served everything on them, every order, every judgment. Everything I found in this case I served on them. And for whatever reason, the Skiles feel they simply can ignore the appellate court and ignore the circuit court and hope to get away with it. I don't think the equities favor such action, and therefore I think this court should enter an award that is consistent with the record, the arguments I've offered, and if the burden of rescission or anything should be placed anywhere, it should be placed upon the Skiles. Your Honor, that's all I have. I have arguments. I know I interrupted your train of thought with my peppering questions, and I do apologize, and I apologize to the panel members because I have a couple more for you. Okay, that's fine. But I want to make sure I understand your theory of the case. So because I interfered with your train of thought, what are you hoping we will do today? How are you hoping we would view this case in terms of dollar figures? Well, one, obviously, my client's preferred remedy is to have you enter an order of rescission, and the reason for that is that somebody is going to have to fix this mess, to put it crudely, and to say my clients have to do it is simply unreasonable. They're not the ones who created the situation. I will point out, by the way, to the extent that the backyard was modified to increase the drainage runoff problems, it's the Skiles who did that. It's the swimming pool. I mean, there's a swimming pool in the backyard. There were various ideas as to how that had an effect, but it's not my client's to put the swimming pool in there, and so if there's any misconduct there, this action should fall on the Skiles. So we like rescission, and then we would like out-of-pocket damages that rescission would not compensate my clients for. The cost of fixing the basement after the first two floods, the expert witness fees and so on. Are you referring to a page in your brief? Yes, Judge, it is page 37, my alternative remedy number one. So what's the bottom line financial figure if we allow your preferred remedy? It would be an order directing the Skiles to rescind the purchase, to execute all the necessary documents like conveyance and so on, and to pay back the purchase price, which is $205,000, and in addition to award damages of $70,736.20 for the effects of the flood, expert witness testimony, punitive damages, things like that. So I'm not very good at math, but it would be like $300,000 in your client's pocket? That's correct approximately. Actually, it was only $205,000. The purchase price would be $275,000 roughly. That's your first preference. What's your alternative? Alternative number two is on page 38. What we're asking here is for damages for reduced value. In other words, what was the house really worth? And that presumes there is no rescission and they keep the house. That is correct, Judge. And that element of damage is $131,000 that was not awarded by the court. That's Mr. Owen Arvin's opinion as to what the house was really worth given the fact that it tended to flood and that my clients did not know that fact. The third alternative is on also page 38-39. So if we do your remedy number two, I'm really sorry. That's okay. What's the bottom line? Total damages are $201,736. And they keep the house. Your clients would keep the house. That's correct. But they paid $205,000, so if we give them $201,000 and they're living in a house that in essence has cost them $4,000. It's cost them $4,000 in purchase price, but it's cost them about $75,000 or $80,000 in terms of remediation costs and so on, which would have to be undertaken out of this money. I mean, the cost to With your remedy number two, are you addressing the court's reduction of the remediation from $80,000 down to $22,000? Are you asking for the full $86,000? Alternative number two does not involve the engineer's remediation. It doesn't involve drainage. That's alternative number three. And alternative number three, the similar things I've asked for already, cost of repair to the first flood, but the big added item is the expert's opinion to prevent future flooding, which is $86,000. And if that calculation Is that the figure the court reduced down to $22,000 or not? That is $32,500. And if you went that route, the total damages would be $188,000. Do you want to speak to the issue of could the court reduce that $86,000 to $22,000? You raised it in your brief. I think the judge did just sua sponte reduce it. He did. Judge, there was expert testimony from one of the defendants, the brokerage firms, and they called an engineer who had helped design the subdivision. And he said he had a way to resolve the problem too, which was again involving diverting water to the east. And he said he thought his solution would cost less than the solution proposed by Mr. Moose, whom we call as an expert. He didn't say how much less. There's really no basis for the court to cut it in half or cut it by a quarter or something. It's admissible evidence, I suppose, but there's no dollar figure. The court couldn't choose between A and B or pick something in the middle. I had a question on your motion to reconsider. You asked the court to award court costs or specified costs because the judge did not do that. That's correct. And I've looked at the costs that are attached to your motion. I think they're exhibits with letter numbers. There was a lawsuit filed against O'Neill. Yeah, O'Neill and O'Neill Construction. 11L something. That's correct. Why did the court, did that lawsuit name the Skiles? It did not, but it was consolidated with the Skiles lawsuit. Why did the court award you court costs in that case and service fees? And I'm confused as to why the court awarded you the cost to serve the other defendants because the costs were $1,176. And really, I'm wondering if it shouldn't just be the cost of filing the complaint and serving the Skiles. You are correct, Judge. The trial court did award service costs against all defendants. The judge did not explain his decision. Obviously, I asked for anything I thought the court might properly award to my clients. Well, it is cost of litigation. I mean, it isn't something that they're asking for arbitrarily. There's a basis for it. It's a liquidated sum. It is a cost to bring this lawsuit. In hindsight, do you think it's proper for the trial judge to award the cost of filing the complaint that did not name the Skiles? In hindsight? Well, Judge, I think it was simply because the two cases were consolidated. So it isn't that they're unrelated or that the suit against the builder was just a different matter. It was all one cause of action. And, in fact, the testimony relevant to one cause of action, generally speaking, was relevant to the others. The question was what was the condition of property at the time. But the Skiles didn't build the property. They did not build the property. Okay. They sold it. I think you've answered my question. Yeah, okay. Thank you, Judge. I have one other question on statute of limitations. Yes. Am I correct, based on reading your amended complaint, that the only thing you allege the Skiles did is make a misrepresentation by omission in their written disclosure? There were no verbal – you haven't pled any verbal conversations or assurances. That is correct, Judge. The mandatory disclosure form was misleading, at the very least. I mean, I think it's beyond misleading. It's fraudulent. But there was no other statement to correct that. Now, conceivably, as somebody could have said in conversation, by the way, we got flooded. In fact, Mrs. Skiles did say that. Trouble is, she said that after my clients had bought the property. If she said that before, then we probably wouldn't be here. I'd like to pick your brain on whether this cause of action is barred, because under the Real Estate Disclosure Act, there's a one-year statute of limitations. So I know you knew you couldn't file it under the Real Estate Disclosure Act. But since there's a single act here, only a single act, do you think it's barred? No, it's not. This issue was litigated before the circuit court, and the defense made exactly your argument. There's case law cited which says that the statement in the disclosure report can form the basis for an action for common-law fraud. Standing alone? Yes, standing alone. That misstatement in there can constitute common-law fraud. Now, obviously, you cannot sue under the statute requiring the submission of the disclosure report, because the statute is one-year for that cause of action. But under fraud- Well, the statute is more specific. Doesn't the statute of limitations in the statute apply rather than the- I'll have to do some research. There is authority on that, Judge. And it was litigated? Very in this record, yes. There is a reference to that. I produced a couple of public court decisions on this that address this issue directly. Which defendant pled that, do you know? I can figure it out. It was probably Mr. Hovey and his employer. He was a real estate broker. Real estate broker. It was Chad Hovey and his employer. They were much more active in the defense, so I suspect it was they who brought these things up. Okay. I appreciate you allowing me to question you. You did make a statement about it. It's certainly been inconvenient for you and your clients not to get a discovery deposition from the Skiles. And it's not the best situation where the defendants don't appear in court or offer a defense. But my reason for questioning you so vigorously is, even though they're not here, we have this remarkable system of justice where procedurally we don't eliminate procedural requirements just because they're not here. I understand. And your evidentiary burden of proof isn't reduced just because they didn't participate. I mean, in other countries maybe it's different. But I just want to say I appreciate you indulging in all my questions. Well, thank you, Judge. I hope my answers were helpful to you. That's all I have. Thank you. Any other questions? Okay. Thank you, Mr. Stringer. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will now stand in brief recess for a panel.